IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT THORNTON,<br><br>    Plaintiff,<br><br>vs.<br><br>COUNTRYWIDE MORTGAGE<br>VENTURES, LLC, et al.,<br><br>    Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:11CV467DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants Countrywide Mortgage Ventures, LLC

d/b/a Silver Mountain Mortgage ("Countrywide") and Mortgage Electronic Registration

Systems, Inc.'s ("MERS") Motion to Dismiss the Complaint.  The motion is fully briefed.  The

court concludes that a hearing would not significantly aid in its determination of the motion.  The

court has carefully considered the parties' pleadings, memoranda, and the law and facts relating

to the motion.  Now being fully advised, the court renders the following Memorandum Decision

and Order.

BACKGROUND

On November 29, 2005, Plaintiff obtained two loans from Countrywide to purchase the

property located at 9003 North Promontory Ranch Road, in Park City, Utah.  The first loan was

for $1,700,000 and the second loan, a construction loan, was for $400,000.  Plaintiff entered into

two promissory notes with Countrywide for the loan amounts.  As security for the notes, Plaintiff

executed two trust deeds, which were recorded on December 12, 2005, with the Summit County

Recorder.

The trust deeds identified Countrywide as "Lender," Plaintiff as "Borrower," Chicago

Title Insurance as "Trustee," and Mortgage Electronic Registration Systems, Inc. ("MERS") as

"beneficiary."  In relation to MERS's rights, the trust deeds stated:

> Borrower understands and agrees that MERS holds only legal title
> to the interest granted by Borrower in this Security Instrument, but
> if necessary to comply with law or custom, MERS (as nominee for
> Lender and Lender's successors and assigns) has the right: to
> exercise any or all of those interests, including, but not limited to,
> the right to foreclose and sell the Property; and to take any action
> required of Lender including, but not limited to, releasing and
> canceling this Security Instrument.

Plaintiff alleges that Countrywide relied on automated underwriting to evaluate Plaintiff

for his loans rather than performing a lender's due diligence to determine the borrower's ability

to repay the loans.  Plaintiff also contends that Countrywide erroneously used "stated income" in

determining Plaintiff's eligibility for the mortgage loan.  Although Plaintiff's "stated" monthly

income is listed as $39,583.33, he claims that he never represented to Countrywide that that was

his income.  Even at this income, Plaintiff states that his debt-to-income ratio was above the

industry standard for prime and subprime loans.

Two years later, Plaintiff needed more money to complete construction on the property,

and he entered into a loan modification with Countrywide.  Plaintiff alleges that Countrywide

told him that a modification of the first loan was the only way that he could get the extra money.

The modification to the first note was recorded on November 5, 2007.  Plaintiff alleges that the

modification changed the terms of the mortgage and made it more beneficial for Countrywide.

The first note was an adjustable rate mortgage, with an initial interest rate of 5.57%. At the first change date, November 1, 2006, the interest rate could not be greater than 7.75% or lower than 3.75%. In addition, the trust deed provided that the interest rate could never be greater than 11.75%. After the first change date, Plaintiff's mortgage payment changed from $9,920.74 to $11,305.06, which Plaintiff alleges was a shock.

Plaintiff admittedly defaulted under the trust deeds. However, there is no allegation in the Complaint that the property was foreclosed or how the default was handled. All of Plaintiff's allegations relate to the original loan transaction in 2005 and the 2007 loan modification. Plaintiff's Complaint alleges causes of action for (1) declaratory judgment determining the rights, status, and legal relations of the parties to the action, namely MERS' right to exercise the power of non-judicial sale; (2) negligent misrepresentation against Countrywide; (3) fraudulent inducement against Countrywide; (4) breach of the implied covenant of good faith and fair dealing against Countrywide; and (5) unjust enrichment against Countrywide.

## DISCUSSION

### I.  Motion to Dismiss

Defendants move to dismiss each of Plaintiff's causes of action for failure to state a claim upon which relief can be granted. The court will address each cause of action in turn.

#### A.  Declaratory Judgment

Plaintiff seeks declaratory judgment that MERS was not a beneficiary under the trust deed and cannot exercise the power to foreclose. The language in the Deed of Trust, signed by Plaintiff, clearly grants MERS the authority to exercise the full ambit of authority possessed by the Lender. Defendants cite numerous decisions from this court analyzing deeds of trust containing the identical language to the deeds of trust at issue in this case and upholding MERS'

authority to be named the nominee beneficiary under a trust deed, act as a beneficiary, conduct

foreclosure proceedings, and make assignments of deeds of trust.  *Van Leeuwen v. Sib Mortgage*

*Corp.*, 2:10CV730TS, 2011 U.S. Dist. LEXIS 885 (D. Utah Jan. 4, 2011); *McGinnis v. GMAC*

*Mtg. Corp.*, 2:10CV301TC, 2010 WL 3418204, *6 (D. Utah Aug. 27, 2010); *Burnett v.*

*Mortgage Elec. Reg. Sys., Inc.*, 1:09CV69DAK, 2009 WL 3582294, *4 (D. Utah Oct. 27, 2009).

The Utah Court of Appeals has also stated its agreement with the cases from this federal district.

*See Commonwealth Prop. Advocates, LLC v. Mortgage Elec. Registration Sys., Inc.*, 2011 UT

App 232, ¶ 10 (2011).   Plaintiff does not address any of the cases cited by Defendants or provide

any cases supporting his own arguments.  The court concludes that under the terms of the trust

deed at issue in this case, MERS can be a nominee beneficiary and initiate foreclosure

proceedings pursuant to that right.  Defendants' motion to dismiss Plaintiff's request for

declaratory judgment, therefore, is granted.

## B.  Negligent Misrepresentation

Plaintiff claims that Countrywide made negligent misrepresentations during the

origination of the loan concerning Plaintiff's ability to make payments and by failing to explain

terms of the loan.  Defendant moves to dismiss Plaintiff's claim for negligent misrepresentation,

arguing that the claim is barred by the applicable statute of limitations, is insufficiently pleaded

under Rule 9(b) of the Federal Rules of Civil Procedure, and lacks merit because it is based on

representations concerning a future event.

With respect to the statute of limitations, the parties dispute whether a negligent

misrepresentation claim is governed by a three or four year statute of limitations.  Plaintiff's

cause of action, however, is barred by either the three-year statute of limitations for fraud-based

claims advocated by Defendants, Utah Code Ann. §§ 78B-2-305(3), 78B-12-26, or the general

four-year statute of limitations advocated by Plaintiff,  *id.* § 78B-2-307(3).  All of Plaintiff's

allegations relate to the first loan that was obtained in November of 2005, and Plaintiff did not

file his Complaint until March 15, 2011, over five years later.

Plaintiff asserts that the statute of limitations should be tolled because he could not have

discovered the negligent misrepresentations until he had a forensic loan audit performed in

January of 2011.  The standard for applying the discovery rule is whether the misrepresentations

could have been discovered through reasonable diligence.  Based on the facts of this case, the

court finds that Plaintiff could have been aware of the alleged misrepresentations through

reasonable diligence at the time he obtained the first loan.  Plaintiff asserts that his income was

stated incorrectly.  The income, however, would have been included on a loan application,

signed by Plaintiff.   Plaintiff could have read the application and discovered the error.  If the

income figure was incorrect, Plaintiff should have corrected it.  Moreover, Plaintiff's complaint

that Countrywide failed to verify his income, and instead relied only on a stated income amount,

would not constitute negligent misrepresentation to Plaintiff.

In addition, Plaintiff should have read terms of the promissory note and trust deed before

signing them and made sure that he understood the terms contained in those agreements.

Plaintiff cites to no law requiring a lender to verbally explain every term in a written document.

Even unsophisticated borrowers are charged with reading a document and understanding its

terms before signing it.  Plaintiff does not allege that Countrywide did not allow him to review

the documents before signing.  At the time he obtained the loan, Plaintiff also could have

discovered whether the terms he was being offered by Countrywide were fair and reasonable.

He could have compared the terms of his loan with other lenders in the marketplace.   He was not

limited to dealing only with Countrywide.  Because the court finds that Plaintiff could have

discovered the alleged misrepresentations at the time he obtained the loan, the court concludes

that there is no basis for applying the discovery rule to toll the statute of limitations.

Moreover, Plaintiff's claim that Countrywide misrepresented Plaintiff's ability to repay

the loan is a statement of a future event that cannot form the basis for a negligent

misrepresentation claim. *See Andalex Resources, Inc. v. Myers*, 871 P.2d 1041, 1047 (Utah Ct.

App. 1994). To the extent that Plaintiff's claim relates only to the statement of his present

income at the time of the application, it is a presently existing fact and can be the basis for a

negligent misrepresentation claim. However, to the extent that Plaintiff is claiming that

Countrywide should have known of his ability to pay in the future, it is not a presently existing

fact. Therefore, Plaintiff's claim as to a future ability to repay is not actionable. Accordingly,

the court grants Defendants' motion to dismiss Plaintiffs' negligent misrepresentation claim.

## C. Fraudulent Inducement

Plaintiff's Third Cause of Action alleges that Countrywide fraudulently represented to

Plaintiff that he would be able to repay the first loan based on unreliable underwriting practices.

This claim, however, is barred by the three-year statute of limitations for fraud-based claims.

Utah Code Ann. §§ 78B-2-305(3), 78B-12-26. For the same reasons as stated for the negligent

misrepresentation claim, there is no basis for applying the discovery rule to toll the statute of

limitations. Plaintiff could have discovered the terms of the loan by reading the loan documents

and could have compared them with other lenders in the marketplace.

Plaintiff also appears to claim that Countrywide fraudulently induced him to enter into a

loan modification in 2007 by stating that it was the only way for him to get the money he needed.

This loan modification also occurred more than three years before Plaintiff filed the present

action and is barred by the statute of limitations unless there is a basis for applying the discovery

rule.  The discovery rule, however, does not apply because at the time he entered into the loan

modification, Plaintiff could have explored his options with other lenders.  Accordingly, the

court concludes that Plaintiff's fraudulent inducement claim is barred by the statute of

limitations.

### D.  Breach of Duty of Good Faith and Fair Dealing

Plaintiff's Fourth Cause of Action alleges that Countrywide breached the implied

covenant of good faith and fair dealing by not performing the necessary diligence in determining

whether Plaintiff could repay the loan and by failing to disclose certain terms of the loan.

"Under the covenant of good faith and fair dealing, each party impliedly promises that he will

not intentionally or purposely do anything which will destroy or injure the other party's right to

receive the fruits of the contract."  *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194,

199 (Utah 1991).

Plaintiff argues that the fruits of the first loan were the interest rates and terms of

repayment.  He states that he accepted them because he found them favorable.  But, where he has

asserted that Countrywide used an unverified stated income, did not inform Plaintiff of the terms

of the note, and did not disclose a premium included in the note, he claims that he has explained

how Countrywide injured his rights to receive the fruits of the contract.

Plaintiff, however, fails to demonstrate any breach of the alleged fruits of the contract.

He admits that he found the interest rate and terms of repayment to be favorable.  He does not

allege that Countrywide altered or breached the terms of the contract by changing the interest

rate or terms of repayment.  Plaintiff actually seems to be complaining that Countrywide

followed the terms of the contract.  Plaintiff's claim that Countrywide did not adequately

disclose the terms of the note appears to be that they failed to do so verbally.  All of the terms of

the loan were disclosed in the loan documents.  Plaintiff specifically admits that the premium was included in the note.  Plaintiff cites to no case requiring a lender to explain each and every term of the contract verbally.  Plaintiff should have read the loan documents before signing them, made sure he understood the documents, asked questions if he did not understand the terms, and then decided whether he wanted to sign the documents.  It is not a breach of the duty of good faith and fair dealing to present another party with a written document, receive the persons signature indicating that they agree to it, and then abide by the terms in that document.

This is not a case where Plaintiff alleges that the Lender did not abide by the terms of the agreements.  Plaintiff has not alleged that Countrywide did anything to destroy his rights under the contract because he received the exact terms the contract provided.  Plaintiff also fails to allege or explain how the use of an unverified stated income impacted the fruits of the contract. Therefore, there is no basis for finding a breach of the implied covenant of good faith and fair dealing.  Accordingly, the court grants Defendants' motion to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.

**E.  Unjust Enrichment**

Finally, Plaintiff's Fifth Cause of Action alleges that Countrywide was unjustly enriched because the loan contained a premium of 1.23%, he was unaware that the premium was in his contract, and Plaintiff made those payments to Countrywide.  "[A] prerequisite for recovery on an unjust enrichment theory is the absence of an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue."  *Espinoza v. Gold Cross Servs.*, 234 P.3d 156, 159 (Utah Ct. App. 2010).

Plaintiff's claim regarding the premium payments is based on and governed by the loan documents.  Plaintiff signed the loan documents containing the premium and the payments were

made under the contract.  Therefore, Plaintiff cannot bring an unjust enrichment claim based on those allegations.  Accordingly, the court grants Defendants' motion to dismiss Plaintiff's unjust enrichment claim.

## CONCLUSION

As set forth above, Defendants' Motion to Dismiss the Complaint is GRANTED.  This case is dismissed with prejudice, each party to bear its and his own fees and costs.

DATED this 19th day of October, 2011.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge